## MONTPELIER SAVINGS BANK & TRUST CO. *v.* QUINN.

MUNICIPAL CORPORATIONS—PUBLIC FUNDS—APPLICATION — JUDG-
MENT—REGULARITY OF ASSESSMENT.

>  Where the supervisors in fact spread a tax for the purpose of
> paying a judgment against a city, and the city treasurer so
> understood and collected the tax, and kept it separate from
> the taxes for other city purposes with full knowledge of the
> purpose for which it was collected and to whom it belonged, it
> is his duty to pay it over as required by section 3983, 1 Comp.
> Laws, though the provisions of the statutes were not strictly
> observed by the assessing officers in spreading the tax.

Mandamus by the Montpelier Savings Bank & Trust
Company to compel James Quinn, treasurer of the city of
Au Sable, to turn over certain moneys collected for the
payment of a judgment. Submitted July 9, 1907. (Cal-
endar No. 21,643.)  Writ granted October 4, 1907.

*Moore, Brown, Miller & Ladd*, for relator.

*Charles R. Henry*, for respondent.

PER CURIAM.  Application for writ of mandamus to
compel respondent to turn over certain moneys, alleged
to have been collected and to be held by him in his offi-
cial capacity, for the purpose of paying a judgment, ren-
dered in the circuit court for Iosco county November 7,
1896, in favor of relator and against the city of Au Sable,
for $1,119.27 damages, and costs taxed at $43.91.

On October 3, 1902, notice pursuant to section 10482, 3
Comp. Laws, was served upon the supervisors and assess-
ing officers of the city, requiring them to assess the amount
due upon the judgment upon the next, 1902, tax rolls and
to deliver to the city clerk the statement required by said
section.

The tax roll of the first ward, for 1902, contains no ref-
erence to city taxes except the usual column, "General

City Tax." The warrant of the supervisor to the city treasurer, however, itemizes the taxes to be collected, etc., as follows: "Two hundred and sixty-five dollars and fifty-nine cents ($265.59) for city purposes." "Five hundred and fifty-seven dollars and seven cents ($557.07) for judgment against city." The recapitulation states the total of "City tax and judgment" as $824.10.

The second ward tax roll contains no reference to the judgment preceding the warrant, which contains the following, "Eight hundred and fifty-six dollars and ninety cents ($856.90) for judgment against city;" and $408.70 for "city purposes."

In the third ward roll the words "and judgment tax" are added to the words, "general city tax," at the head of column 12, and the warrant directs the collection of "$158.74 for judgment tax."

Issues having been framed and tried before Judge Sharpe, sitting in the Iosco circuit, he made the following findings, to which exceptions were duly taken by respondent's counsel:

"4th. Whether the amount of such judgment, with interest, amounting in all to $1,572.71, was spread upon the tax rolls of the city of Au Sable for the year 1902?

"*A*. Yes. There was nothing in the tax roll, however, to identify it as the judgment in question. The warrant authorized the collection of the amount of the judgment as a 'Judgment against the city.'

"5th. Whether James Quinn, treasurer of the city of Au Sable, collected any of the amounts so spread upon the said tax rolls and, if he did, what amount was collected by him?

"*A*. Yes. Respondent collected upon said tax rolls $991.73 of the amount spread as a judgment against the city.

"6th. Whether the said James Quinn, city treasurer, was ever authorized, directed or required in any manner to collect said judgment or any part thereof, and pay the same to the Montpelier Savings Bank & Trust Co.?

"*A*. He was authorized to and did collect, as stated in answer to issue five. He was not authorized or directed to pay the amount thus collected to relator.

"7th. What amount, if any, has James Quinn, city treasurer, now in his possession or under his control, collected upon the tax rolls of the city of Au Sable for the year 1902 to apply upon said judgment?

"*A.* $991.73 in his hands on March 30, 1906."

It is clear that the provisions of the statute were not strictly observed by the assessing officers, and, so far as filing the statement with the city clerk is concerned, were not observed at all. But we think it equally clear from the testimony that the supervisors did in fact spread this tax upon the rolls and respondent so understood and collected the tax, at least to the amount found by the circuit judge, and kept it separate from the taxes for other city purposes, with full knowledge of the purpose for which it was collected and to whom it belonged. There was abundant testimony to sustain the findings of the circuit judge, and it is the duty of respondent to pay the money over, according to the requirements of the statute. 1 Comp. Laws, § 3983.

The writ of mandamus will issue as prayed, with costs to relator of the proceedings in the circuit as well as in this court.